IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

MICHAEL HOCKENBURY, an individual, on behalf of himself and others similarly situated,

    Plaintiff,

vs.

THE HANOVER INSURANCE COMPANY,

    Defendant.

Case No. CIV-15-1003-D

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441, 1446 and 1453(b), Defendant The Hanover Insurance Company ("Hanover") hereby removes to this Court the action captioned as *Michael Hockenbury, an individual, on behalf of himself and others similarly situated v. The Hanover Insurance Company*, Case No. CJ-2015-207T5 on the docket of the District Court of Cleveland County, State of Oklahoma.

In support of their Notice of Removal, Hanover respectfully alleges:

1. On or about February 20, 2015, Plaintiff Michael Hockenbury commenced the captioned action by filing a petition in the District Court of Cleveland County, State of Oklahoma. A copy of all process, pleadings, orders and other papers on file in the state court action is attached as Exhibit 1 hereto.

2. The Summons and the Complaint were served on the Insurance Commissioner of the State of Oklahoma, as agent for service of process for Hanover pursuant to 36 Okla. Stat. § 621(B), on August 17, 2015. This Notice of Removal is filed

12608242-v1

within 30 days of service of process and is therefore timely under 28 U.S.C. § 1446(b).

3.  This Court has jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Hanover, and the amount in controversy with respect to Plaintiff's individual claims exceeds $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction over the claims of the putative class members pursuant to 28 U.S.C. § 1367, even if some of those claims are for less than $75,000. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005).

4.  This Court also has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this lawsuit is a "class action," as defined by CAFA, in which there is minimal diversity of citizenship, and the amount in controversy exceeds $5 million, as explained further below. This Court also has jurisdiction under 28 U.S.C. § 1453(b) because this lawsuit is a "class action" as defined by CAFA.

## PARTIES

5.  Plaintiff Michael Hockenbury is an individual domiciled in Norman, Cleveland County, Oklahoma. (Petition, ¶ 1.)

6.  Defendant The Hanover Insurance Company is an insurance company organized under the laws of New Hampshire, with its principal place of business in Worcester, Massachusetts. (*Id.*, ¶ 2.)

## PLAINTIFF'S ALLEGATIONS[1]

7.  Plaintiff filed this case as a putative class action under 12 Okla. Stat. § 2023. (Petition, ¶ 30.) Plaintiff alleges that Hanover issued a homeowners' insurance policy to him, insuring his home and its contents in Norman, Oklahoma. (*Id.*, ¶¶ 1, 3-4.) On or about July 11, 2011, Plaintiff's property was damaged by a water loss, and Plaintiff submitted a claim to Hanover for that damage. (*Id.*, ¶ 6.)

8.  The First Cause of Action in the Petition pleads a claim for breach of contract, alleging that "HANOVER has breached its contractual obligations under the terms and conditions of the insurance contract with Plaintiff by failing to pay Plaintiff all benefits owed." (*Id.*, ¶ 15.) Plaintiff's Petition does not specify which provisions he claims were breached, or what benefits he claims are owed. Plaintiff alleges, however, that he "has sustained financial losses and has been damaged in an amount in excess of Ten Thousand Dollars ($10,000.00), exclusive of attorneys' fees, costs, and all interest allowed by law." (*Id.*, ¶ 16.) Plaintiff further alleges that "[t]he conduct of Defendant, HANOVER was intentional, willful, malicious, and in reckless disregard to the rights of Plaintiff, and said conduct is sufficiently egregious in nature to warrant the imposition of punitive damages." (*Id.*, ¶ 17.)

---

[1] Hanover does not admit the underlying facts as alleged by Plaintiff or as summarized herein. Hanover expressly denies any liability to Plaintiff or the putative class. Hanover reserves its rights to challenge the legal sufficiency of the allegations in the Complaint. This notice is being filed for purposes of establishing jurisdiction only and does not constitute an admission of liability. *See Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245 (10th Cir. 2012) (explaining that amount in controversy "is not 'the amount the plaintiff will recover,' but rather 'an estimate of the amount that will be put at issue in the course of the litigation'"); *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013) ("[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability").

9. The Second Cause of Action in the Petition alleges a claim for bad faith. Plaintiff alleges that Hanover failed to act in good faith in various respects, including by "[f]ailing to pay the full and fair amount for the property damage sustained by Plaintiff during the July 11, 2011 water loss," "[f]ailing to pay all additional coverages due and owing to Plaintiff," violating the Oklahoma Unfair Claims Settlement Practices Act, 36 Okla. Stat. §§ 1250.1-1250.16, and various other respects. (Petition, ¶ 20.) Plaintiff alleges in this cause of action that he "has sustained financial losses and has been damaged in an amount in excess of Ten Thousand Dollars ($10,000.00), exclusive of attorneys' fees, costs, and all interest allowed by law." (*Id.*, ¶ 26.) Plaintiff further alleges that "[t]he conduct of Defendant, HANOVER was intentional, willful, malicious, and in reckless disregard to the rights of Plaintiff, and said conduct is sufficiently egregious in nature to warrant the imposition of punitive damages." (*Id.*, ¶ 27.) Plaintiff also alleges that "Defendant, HANOVER enjoyed increased financial benefits and ill-gotten gains as a direct result of the intentional and wrongful conduct described above, which resulted in further damage to the Plaintiff." (*Id.*, ¶ 28.)

10. The Third Cause of Action in the Petition contains the class action allegations. Plaintiff seeks to bring this lawsuit on behalf of a putative class proposed to be defined as follows:

> All persons who submitted claims to HANOVER for property damage under homeowners or commercial policies issued in or covering property in the state of Oklahoma at any time after February 1, 2009, excluding HANOVER's officers, directors, and employees, and excluding Plaintiffs' attorneys and staff.

(*Id.*, ¶ 31.)

11. Plaintiff alleges that "[a]lthough the precise number of class members is unknown, in 2013 alone, Defendant, HANOVER and/or its affiliated companies wrote $51.9 million dollars in net premium for commercial and personal lines in the State of Oklahoma." (*Id.*, ¶ 35.)

12. Plaintiff further alleges that: "Plaintiff's claims are typical of the claims of the members of the class Plaintiff seeks to represent. Without limitation, Plaintiff's claims that Defendant, HANOVER's alleged acts and practices are in breach of its contractual obligations and also are in breach of its common law and statutory duties as alleged above are typical of the claims of the members of the class. Further, Plaintiff and all members of the class are similarly affected by Defendant, HANOVER's wrongful conduct in that Defendant, HANOVER engaged in the same conduct or type of conduct on a corporate-wide basis, applicable to all claims." (*Id.*, ¶ 37.)

13. The prayer for relief in the Petition seeks, on behalf of Plaintiff, "[p]ayment of all contractual benefits for all coverages afforded to Plaintiff under the subject policy of insurance for damage to his dwelling and personal property caused by the July 11, 2011, catastrophe, together with interest on all amounts due." (Petition, Prayer for Relief, ¶ a.)

14. The prayer for relief seeks, on behalf of the putative class, "[p]ayment of all contractual benefits due and owing to members of the class," as well as "[d]isgorgement of the increased financial benefits derived by Defendant as a direct result of Defendant's wrongful or intentional, willful, malicious and/or reckless conduct." (*Id.*, Prayer for Relief, ¶¶ b, c.) Plaintiff alleges that he seeks "in excess of Ten Thousand Dollars

($10,000.00) but less than Seventy Five Thousand Dollars ($75,000) on Plaintiff's individual claim," and "[t]otal damages on the Class Claims less than Five Million Dollars ($5,000,000.00)," as well as attorneys' fees, costs and interest. (*Id.*, Prayer for Relief, ¶¶ d, e, f.)

## TRADITIONAL DIVERSITY JURISDICTION

15.  Removal is proper under 28 U.S.C. § 1332(a) because Plaintiff and Hanover are citizens of different states, and the amount in controversy on Plaintiff's individual claims exceeds $75,000, exclusive of interest and costs. Complete diversity exists because Plaintiff is a citizen of Oklahoma (Petition, ¶ 1), and Hanover is a citizen of Massachusetts and New Hampshire. (*Id.*, ¶ 2.)

16.  The amount in controversy on Plaintiff's individual claim exceeds $75,000. Plaintiff alleges that he "has been damaged in an amount in excess of Ten Thousand Dollars ($10,000.00), exclusive of attorneys' fees, costs, and all interest allowed by law." (Petition, ¶ 16.) Plaintiff also pleads a claim for punitive damages, alleging that "[t]he conduct of HANOVER was intentional, willful, malicious, and in reckless disregard to the rights of Plaintiff, and said conduct is sufficiently egregious in nature to warrant the imposition of punitive damages." (*Id.*, ¶ 17.) Plaintiff seeks "[a]ctual and punitive damages **each** in an amount in excess of Ten Thousand Dollars ($10,000.00) but less than Seventy Five Thousand Dollars ($75,000) on Plaintiff's individual claim." (*Id.*, Prayer for Relief, ¶ d (emphasis added).)

17.  Punitive damages are properly considered in determining the amount in controversy for purposes of diversity jurisdiction. *Frederick v. Hartford Underwriters*

*Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012). Under Oklahoma law, "[w]here the jury finds by clear and convincing evidence that . . . [a]n insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured; the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greater of: a. One Hundred Thousand Dollars ($100,000.00), or b. the amount of the actual damages awarded." 23 Okla. Stat. § 9.1(B). If the jury finds by clear and convincing evidence that "[a]n insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured," a punitive damages award many not exceed "the greatest of: a. Five Hundred Thousand Dollars ($500,000.00), b. twice the amount of actual damages awarded, or c. the increased financial benefit derived by the defendant or insurer as a direct result of the conduct causing the injury to the plaintiff and other persons or entities." *Id.* § 9.1(C). Here, Plaintiff alleges that Hanover's conduct was purportedly "intentional, willful, malicious, and in reckless disregard to the rights of Plaintiff . . . ." (Petition, ¶¶ 17, 27.) Based on Plaintiff's allegations (Petition, ¶ 16 and Prayer for Relief, ¶ d), he is seeking to recover more than $10,000 in actual damages, and up to $75,000 in punitive damages, which falls within the limitations of 23 Okla. Stat. § 9.1(B) and (C). When combined, the amount expressly claimed by Plaintiff exceeds $85,000, and Oklahoma's punitive damages statutes potentially allow recovery of a greater amount based on Plaintiff's allegations of purported intentional and willful conduct. At a minimum, the allegations of purported intentional and willful conduct would potentially allow for punitive damages to be awarded in excess of $65,000, which, together with the $10,000 minimum claimed for

7

compensatory damages, would exceed the $75,000 threshold. Moreover, given that Plaintiff seeks up to $74,999 of compensatory damages (Prayer for Relief, ¶ d), and punitive damages of at least $10,000, the $75,000 threshold is also satisfied on that basis. The amount in controversy as pleaded thus exceeds $75,000 on Plaintiff's individual claims. *See, e.g., Singleton v. Progressive Direct Ins. Co.*, 49 F. Supp. 3d 988, 994 (N.D. Okla. 2014) (amount in controversy requirement was satisfied where plaintiff "asked for actual damages exceeding $10,000, [and] a punitive damages award of $65,000 or more would reach the jurisdictional threshold," which "would require no more than a single-digit ratio of punitive damages to actual damages"; the plaintiff's allegations "that Progressive failed to properly investigate her claims, delayed payments or withheld them altogether, and used its unequal bargaining position to overwhelm and take advantage of her" were sufficient to demonstrate that punitive damages potentially could be awarded); *C&S Roofing & Fencing, LLC v. State Farm & Cas. Co.*, 2015 U.S. Dist. LEXIS 105634, *4-5 (W.D. Okla. Aug. 12, 2015) (denying motion to remand because allegations regarding compensatory and punitive damages demonstrated that complaint alleged more than $75,000 in controversy).

18.  Given that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a) over the Plaintiff's individual claims, this Court has supplemental jurisdiction over the claims of the putative class members pursuant to 28 U.S.C. § 1367, even if some of those claims are for less than $75,000. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005).

## JURISDICTION UNDER CAFA

19. Removal is proper under CAFA, 28 U.S.C. § 1332(d)(2), where, as here, a putative class action involves minimal diversity of citizenship and an aggregate amount in controversy exceeding $5 million. Removal is also proper under 28 U.S.C. § 1453(b) because this lawsuit is a "class action" as defined by CAFA.

20. CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a "class action" under CAFA because it was brought under a state statute or rule, namely 12 Okla. Stat. § 2023, authorizing an action to be brought by one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B); Petition, ¶ 30.

### Minimal Diversity

21. This case satisfies the minimal diversity requirement of CAFA because at least one member of the putative class is a citizen of a state different from at least one defendant. *See* 28 U.S.C. § 1332(d)(2)(A). Plaintiff is a citizen of Oklahoma. (Petition, ¶ 1.) Hanover is a citizen of Massachusetts and New Hampshire. (*Id.*, ¶ 2.)

### Amount in Controversy

22. This case satisfies CAFA's amount in controversy requirement because the matter in controversy exceeds the sum of $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). CAFA provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *Id.*, § 1332(d)(6). As the Supreme Court has explained, "the statute tells the District Court to determine whether it has

jurisdiction by adding up the value of the claim of each person who falls within the definition of [the plaintiff's] proposed class and determine [sic] whether the resulting sum exceeds $5 million. If so, there is jurisdiction and the court may proceed with the case." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013). To the extent that Plaintiff alleges that the damages do not exceed $5 million (Petition, Prayer for Relief, ¶ e), that allegation is irrelevant in determining the amount in controversy. As the Supreme Court held in *Knowles*, even where a named plaintiff attempts to stipulate to the amount in controversy, the stipulation must be ignored in determining the amount in controversy "because a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." *Id.* at 1349.

23.   The Supreme Court has further explained that "no antiremoval presumption attends cases involving CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). To satisfy the statutory requirements for removal, "a defendant's notice of removal need include only a <u>plausible allegation</u> that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554 (emphasis added).

24.   The amount in controversy exceeds $5 million. Set forth below is an analysis of the amount in controversy for the putative class members' claims, with respect to both compensatory and punitive damages.

**Compensatory Damages**

25.   Plaintiff alleges that his claims are "typical of the claims of the members of the class Plaintiff seeks to represent," and that "Plaintiff and all members of the class are

10

similarly affected by Defendant, HANOVER's wrongful conduct . . . ." (Petition, ¶ 37.) In adjusting Plaintiff's claim, Hanover paid $8,870.02. Plaintiff alleges that the compensatory damages he seeks on his individual claim are in excess of $10,000 but less than $75,000 (Petition, ¶ 16; Prayer for Relief ¶ d), and thus Plaintiff contends that his individual claim was underpaid by a minimum of approximately 113% and potentially as much as 745%.

26. The putative class is defined as "All persons who submitted claims to HANOVER for property damage under homeowners or commercial policies issued in or covering property in the state of Oklahoma at any time after February 1, 2009, excluding HANOVER's officers, directors, and employees, and excluding Plaintiffs' attorneys and staff." (Petition, ¶ 31.) Hanover searched its claim payment data to identify claims with dates of loss from January 27, 2009 through July 28, 2015,[2] with loss locations in Oklahoma, under homeowners and commercial insurance policies, where the claim involved damage to property.[3] This search identified 2,753 claims falling within the putative class, with payments on those claims, as reflected in the data, totaling $73,671,644.37. Given that Plaintiff has alleged that his claim is typical of the putative class, and he claims to have been underpaid by at least 113%, it is clear that the amount in controversy for the putative class, based on Plaintiffs' allegations, far exceeds $5 million. Even if Plaintiff's claim were atypical, and the putative class members sought to

---

[2] Although this time period differs slightly from the class period (in a nonmaterial way), it was used because of the manner in which Hanover maintains its accounting records.
[3] The claim data includes claims for lost or stolen property in addition to physical damage to real and personal property. While Plaintiff's allegations appear to encompass claims for lost or stolen property, even if those claims were excluded from the analysis, the amount in controversy would still substantially exceed $5 million.

recover only an additional 10% on average, the amount in controversy, for compensatory damages alone, would substantially exceed $5 million. Alternatively, given that there are 2,753 claims falling within the putative class, if each policyholder recovered $1,817 (far less than Plaintiff is seeking on his own claim), the $5 million amount in controversy requirement would be satisfied based on compensatory damages alone. *See, e.g., Parrish v. Range Res. Corp.*, 2015 U.S. Dist. LEXIS 42639, *4-5 & n.3 (W.D. Okla. Apr. 1, 2015) (denying motion to remand, concluding that defendants properly estimated the amount in controversy by estimating amounts sought on certain claims for certain time periods and then extrapolating the result across the proposed class); *Foster v. Merit Energy Co.*, 2010 U.S. Dist. LEXIS 145045, *5-6 (W.D. Okla. Oct. 22, 2010) (amount in controversy requirement under CAFA was satisfied in case involving alleged underpayment of royalties where even a small percentage of underpayment, plus punitive damages, would exceed $5 million).

27.     Plaintiff also seeks to recover "[d]isgorgement of the increased financial benefits derived by Defendant as a direct result of Defendant's wrongful or intentional, willful, malicious and/or reckless conduct." (Petition, Prayer for Relief, ¶¶ b, c.) Even if this amount were only a relatively small percentage of the approximately $73.7 million paid out by Hanover to the putative class members, it would further demonstrate that the amount in controversy exceeds $5 million.

**Punitive Damages**

28.     As the Tenth Circuit has explained, in demonstrating the amount in controversy under CAFA with respect to punitive damages, "[t]he defendant does not

12

have to prove that the plaintiff is more likely than not to ultimately recover punitive damages, but merely that: (1) state law permits a punitive damages award for the claims in question; and (2) the total award, including compensatory and punitive damages, could exceed $5,000,000." *Frederick*, 683 F.3d at 1248. "The defendant may point to facts alleged in the complaint, the nature of the claims, or evidence in the record to demonstrate that an award of punitive damages is possible." *Id.*

29. Plaintiff's claim on behalf of the putative class for punitive damages further demonstrates that the $5 million jurisdictional threshold is easily satisfied. Plaintiff's Petition expressly seeks an award of punitive damages. (Petition, ¶¶ 17, 27, Prayer for Relief ¶ d.) The claim for punitive damages is expressly incorporated into the putative class claim. (Petition, ¶ 29.) Under Oklahoma law, "[w]here the jury finds by clear and convincing evidence that . . . [a]n insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured; the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greater of: a. One Hundred Thousand Dollars ($100,000.00), or b. the amount of the actual damages awarded." 23 Okla. Stat. § 9.1(B). If the jury finds by clear and convincing evidence that "[a]n insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured," a punitive damages award many not exceed "the greatest of: a. Five Hundred Thousand Dollars ($500,000.00), b. twice the amount of actual damages awarded, or c. the increased financial benefit derived by the defendant or insurer as a direct result of the conduct causing the injury to the plaintiff and other persons or entities." *Id.* § 9.1(C).

Here, Plaintiff alleges that Hanover's conduct was purportedly "intentional, willful, malicious, and in reckless disregard to the rights of Plaintiff . . . ." (Petition, ¶¶ 17, 27.) These allegations of purported intentional and malicious conduct are incorporated by reference into the putative class claims. (*Id.*, ¶ 29.)

30. Here, as discussed above, Plaintiff's allegations regarding compensatory damages demonstrate an amount in controversy exceeding $5 million, and the possibility of a punitive damages award on top of that makes it even more clear that the $5 million threshold is satisfied. Even if, contrary to what Plaintiff has alleged regarding his own claim, that the compensatory damages were only $650 on average for each of the 2,753 putative class claims (for a total of $1,789,450, or merely 2.4% of the amount paid by Hanover on the claims), Plaintiff's allegations of purported intentional and malicious conduct reasonably require adding to the amount in controversy potential punitive damages of at least double the amount of potential compensatory damages (i.e., $3,578,900), in which case the amount in controversy would exceed $5.3 million. *See, e.g., Foster*, 2010 U.S. Dist. LEXIS 145045, at *5-6.

### Attorneys' Fees

31. The Petition also seeks an award of attorneys' fees. (Petition, Prayer for Relief, ¶ f.) Attorneys' fees may be included in the amount in controversy where they are potentially available under a statute. *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998). Here, attorneys' fees are potentially available to a prevailing party in a dispute under an insurance contract. *See* 36 Okla. Stat. § 3629(B); *Lindley v. Life Investors Ins. Co. of Am.*, 2008 U.S. Dist. LEXIS 81974, *13-14 (N.D. Okla. Oct. 2,

2008) (attorneys' fees potentially available to plaintiff under 36 Okla. Stat. § 3629(B) were properly included in calculating the amount in controversy). Oklahoma law requires that "the attorney fees must bear some reasonable relationship to the amount in controversy." *Spencer v. Okla. Gas & Elec. Co.*, 171 P.3d 890, 895 (Okla. 2007). In some cases, the Oklahoma Supreme Court has approved fee awards in excess of the amount of damages awarded. *Id.* at 898. The maximum contingency fee permitted in Oklahoma is 50% of the net judgment recovered. 5 Okla. Stat. § 7.

32.     Here, as demonstrated above, the amount in controversy readily exceeds $5 million without including any attorneys' fees. The potential for attorneys' fees further demonstrates that the $5 million threshold is satisfied. Assuming, contrary to Plaintiff's allegations regarding is own claim, that the amount of compensatory damages were only $500 per claim on average (totaling $1,376,500), after adding a conservative amount of potential punitive damages at twice the compensatory award ($2,753,000) and potential attorneys' fees at a conservative percentage of 25% of the total potential damages ($1,032,370), the amount in controversy would exceed $5.1 million. Plaintiff's allegations seek far more, but there can be no reasonable dispute that the $5 million threshold is satisfied.

### Exceptions to CAFA Jurisdiction

33.     None of the exceptions to CAFA jurisdiction applies. No defendant is a citizen of the state in which the action was filed, i.e., Oklahoma. Accordingly, 28 U.S.C. §§ 1332(d)(3) and (d)(4) do not apply. Section 1332(d)(5)(A) does not apply because no

defendant is a State, State official or other governmental entity against which this Court may be foreclosed from ordering relief. Section 1332(d)(5)(B) does not apply because the number of members of all proposed plaintiff classes in the aggregate exceeds 100, as set forth above. Section 1332(d)(9) does not apply because Plaintiff's claims do not involve securities or the internal affairs or governance of a corporation or other form of business enterprise.

34. Accordingly, this Court has original jurisdiction under CAFA.

## REMOVAL PROCEDURE

35. A copy of this notice of removal is being served upon all known counsel of record, along with a copy of the Notice to the Clerk of Court for the District Court of Cleveland County, State of Oklahoma, which is being filed simultaneously in that court.

36. Pursuant to 28 U.S.C. § 1447(b), copies of all process, pleadings, orders and other papers on file in the state court action are attached as Exhibit 1 hereto.

**WHEREFORE**, Hanover hereby provides notice that this action is duly removed to this Court.

Respectfully Submitted,

s/ Sarah J. Timberlake
ABOWITZ, TIMBERLAKE & DAHNKE, PC
105 North Hudson, 10th floor
PO Box 1937
Oklahoma City, OK 73102-5405
Tel. 405-236-4645
Fax 405-239-2843
E-mail: sjt@abowitzlaw.com

Of Counsel:

Stephen E. Goldman
(*pro hac vice* motion to be filed)
Wystan M. Ackerman
(*pro hac vice* motion to be filed)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. 860-275-8200
Facsimile 860-275-8299
E-mail: sgoldman@rc.com
E-mail: wackerman@rc.com

*Attorneys for Defendant*
*The Hanover Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 15th, 2015, a copy of the foregoing was served by first-class mail, postage prepaid, on the following:

J. Drew Houghton
Foshee & Yaffe
P.O. Box 890550
Oklahoma City, OK 73189

Timothy B. Hummel
Hummel Law Office
500 West Main Street, Suite 102
Oklahoma City, OK 73102

s/ Sarah J. Timberlake